**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHAD MCDONALD,

     Plaintiff,

v.                             Case No. 8:26-cv-207-KKM-TGW

KURT A. HOFFMAN,
in his official capacity,

     Defendant.

_____

## <u>ORDER</u>

Former Sarasota County Sheriff's Office (SCSO) detective Chad McDonald brings claims against Sheriff Kurt Hoffman, in his official capacity, for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of McDonald's procedural due process rights under the Fourteenth Amendment, and promissory estoppel. *See* Am. Compl. (Doc. 15). Hoffman moves to dismiss McDonald's complaint for failure to state a claim and as barred by sovereign immunity. Mot. (Doc. 17). Because McDonald fails to allege a federal constitutional violation, I grant Hoffman's motion with respect to that claim but otherwise remand the remaining state law claims for adjudication in state court.

## I.    BACKGROUND

While employed by the SCSO as a detective, McDonald interviewed a female to learn whether she had information relevant to a homicide investigation. Am. Compl. ¶ 6. The female's former boyfriend filed a complaint alleging that McDonald "and/or his lieutenant," who was present at the meeting, "got the female drunk and tried to have sex with her." *Id.* ¶ 9. In August 2023, the SCSO initiated an Internal Affairs investigation and placed McDonald on administrative leave. *Id.* ¶ 10. On November 28, 2023, McDonald "attended a pre-disciplinary hearing with SCSO Human Resources" and was terminated two days later, on November 30, 2023. *Id.* ¶ 13.

McDonald "was entitled to a Career Service Appeals Board to challenge the termination decision." *Id.* The Board was to be comprised of five individuals: two chosen by McDonald, two chosen by Hoffman, and one chosen by the first four selected individuals. *See id.* On December 1, 2023, McDonald "met with Detective Sarah Sanchez who volunteered" to serve on the Board, and he spoke to two other individuals, "both of whom expressed concern for their jobs if they sat on the Board." *Id.* ¶ 14. That same day, Sanchez reported to McDonald "that she had been subjected to intimidation by supervisors within SCSO who told her that her participation . . . would be looked upon as opposition towards [Sheriff Hoffman] and would not be in her best interest."

*Id.* ¶ 15. According to McDonald, "he knew that the Board would be stacked against him and there was no way for him to prevail." *Id.* ¶ 16.

On December 1, 2023, McDonald "agreed to waive the Career Service Appeals Board in return for acceptance of his resignation" by "sign[ing] a resignation letter *nunc pro tunc* to November 29, 2023," the day before his termination. *Id.* ¶¶ 17–18; *see* Ex. A (Doc. 15-1). In the letter, McDonald represented that, "for both parties to avoid any further administrative action with respect to this cause," he "inten[ded] to waive further procedural steps and expressly waive all rights to judicial review of or to otherwise challenge or to contest the validity of any facts presented and/or conclusions of general orders." Ex. A at 1. McDonald's letter further stated: "With your acceptance of my resignation, I waive my right to pursue an appeal with the Career Service [Appeals] Board and waive my right to any future civil remedies." *Id.*

McDonald's counsel then emailed the letter to the SCSO's General Counsel, Julie Herd, writing "Please advise that you received this letter. Please confirm if/when the Sheriff accepts." Ex. A at 3. Herd first "confirm[ed] receipt of [McDonald's] letter," explaining that the SCSO was "taking it under advisement." *Id.* at 3. Less than twenty minutes later, Herd replied that "Sheriff Hoffman has accepted Mr. McDonald's resignation letter," and attached a countersigned copy. *See id.* at 2.

On December 6, 2023, "after the deadline to request a Career Service . . . Appeals Board had expired," the SCSO "informed [McDonald] that SCSO's stance, specifically Hoffman's stance, was that [McDonald] remained terminated, not resigned." Am. Compl. ¶ 20. According to McDonald, the SCSO reasoned that "his resignation letter was 'accepted' only as an addition to his personnel file and that their previous communication was not indicative of any agreement to change the status of his departure from SCSO in exchange for his promise not to pursue a Career Service Appeals Board." *Id.* ¶ 21. The SCSO classified McDonald as "terminated" in an Internal Affairs report dated December 21, 2023, and in "documentation sent to the Florida Department of Law Enforcement regarding his departure from SCSO." *Id.* ¶ 22. Because of this classification, McDonald claims he is "essentially 'unhir[]able.' " *Id.*

On December 4, 2025, McDonald sued Hoffman in state court, alleging claims for breach of contract, violation of procedural due process, defamation, and breach of the implied covenant of good faith and fair dealing. Compl. (Doc. 1-1). Hoffman timely removed the case to federal court, invoking this Court's jurisdiction under 28 U.S.C. § 1331 based on McDonald's federal constitutional claim. *See* Notice of Removal (Doc. 1) ¶¶ 4–5. McDonald then filed an amended complaint, dropping his defamation claim but adding a claim for promissory estoppel. *See* Am. Compl. ¶¶ 51–60. Hoffman moves to dismiss the complaint, *see* Mot., and McDonald opposes, Resp. (Doc. 20).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.    ANALYSIS

Hoffman moves to dismiss the entirety of McDonald's complaint, including both his state and federal claims.

Hoffman first argues that McDonald fails to state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing because the parties never assented to the same terms, and thus never formed an express contract. *See* Mot. at 6–9. According to Hoffman, McDonald's purported contract "would constitute a violation of the Sheriff's legal responsibility to maintain his agency's public records." *See id.* at 9–12; *see also* § 119.021(1), Fla. Stat. In the alternative, Hoffman argues that Florida "has not waived sovereign immunity for implied breach of contract claims under Fla. Stat. § 768.28." *Id.* at 12; *see id.* at 16–19 (arguing that sovereign immunity bars McDonald's claim for promissory estoppel). As for the due process claim, Hoffman avers that McDonald fails to state a claim because McDonald knew of his right to appeal his termination yet failed to avail himself of that opportunity. *Id.* at 14–16.

### A. Count II: Procedural Due Process

Because McDonald's Fourteenth Amendment due process claim provides the jurisdictional hook for this case, I start there. And I agree with Hoffman that McDonald's complaint fails to state a claim for any constitutional violation.

Suing under 42 U.S.C. § 1983, McDonald alleges that he "possessed a constitutionally protected liberty and/or property interest in public employment," and that SCSO, "through its policies, customs, practices, and/or

6

acts of final policymakers and through trickery and sabotage, deprived [McDonald] of this protected interest without providing constitutionally required procedural protections." Am. Compl. ¶¶ 34–35. McDonald asserts that Hoffman "threaten[ed] and/or intimidat[ed] at least one of his selectees for the Board," causing McDonald to "g[i]ve up his right to pursue" an appeal "in exchange for acceptance of his resignation." *Id.* ¶ 37. After McDonald's deadline to appeal had passed, Hoffman "reneged on [his] agreement to accept [McDonald's] resignation *nunc pro tunc*," thereby "eliminat[ing] [McDonald's] ability to have a Board hear his appeal of his termination." *Id.* ¶ 38.

To state a Fourteenth Amendment procedural due process claim, a plaintiff must allege "(1) a deprivation of a constitutionally-protected property interest; (2) state action; and (3) constitutionally-inadequate process." *Spencer v. Benison*, 5 F.4th 1222, 1232 (11th Cir. 2021) (citation modified). "The process that a state provides is both that employed by the government entity whose action is in question and the remedial process that state courts would provide if asked." *Randel v. Rabun Cnty. Sch. Dist.*, No. 21-12760, 2022 WL 1195655, at *2 (11th Cir. Apr. 22, 2022) (per curiam) (citing *Horton v. Bd. of Cnty. Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000)). Importantly, even "[w]hen a state procedure is inadequate," the state does not violate the plaintiff's due process right "unless and until the state fails to remedy that inadequacy." *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) (en banc), *abrogation on*

*other grounds recognized by Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1239–40 (11th Cir. 2025). For that reason, "that [the plaintiff] failed to avail himself of the full procedures provided by state law . . . does not constitute a sign of their inadequacy." *Id.* at 1565 (citation modified). Rather, "[t]he plaintiff's need to seek state remedies is a requirement to state a procedural due process claim." *Randel*, 2022 WL 1195655, at *2 (citing *Cotton v. Jackson*, 216 F. 3d 1328, 1331 & n.2 (11th Cir. 2000)).

To start, McDonald likely lacks a protected property interest in his position with the SCSO. *See Perez v. City of Opa-Locka*, 629 F. Supp. 3d 1164, 1180 (S.D. Fla. 2022) (finding that Florida law "does not provide law enforcement officers with a property interest or expectancy of continued employment, employment, or appointment as a law enforcement officer." (quoting § 112.532(4), Fla. Stat.)).[1]

---

[1] Both parties also assume that McDonald held a property interest in his reputation. *Compare* Mot. at 14–16, *with* Resp. at 6–7. To be sure, "when an employer publishes a false and stigmatizing statement about an employee in connection with her discharge, due process requires a meaningful opportunity to clear one's name— through what is called a 'name-clearing hearing,' upon request—whether before or after the termination or publication." *Johnston v. Borders*, 36 F.4th 1254, 1272 (11th Cir. 2022) (quoting *Buxton v. City of Plant City*, 871 F.2d 1037, 1046 (11th Cir. 1989)). "To recover, a plaintiff must show that (1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) was made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing." *Id.* (citation modified). McDonald cannot claim that he lacked a meaningful opportunity for a hearing that he did not pursue. In any event, he fails to allege the other required elements of a defamation-based due process claim.

Even assuming a valid property interest, McDonald cannot claim that state procedures were inadequate when he failed to avail himself of those same procedures. As required by Florida law, McDonald received notice of the internal affairs investigation, a pre-disciplinary hearing, and written notice of his termination. *See* Am. Compl. ¶¶ 9–10, 13; *see also* § 112.532(1)–(4), Fla. Stat. (explaining the rights of Florida law enforcement officers while under internal investigation). Then, as McDonald alleges, Florida law entitled him "to a Career Service Appeals Board to challenge the termination decision."[2] *Id.* ¶ 13; *see* § 112.532(2), Fla. Stat. But McDonald never pursued his appeal to the Board. Although McDonald claims "that the Board would be stacked against him," Am. Compl. ¶ 16, he never alleges that any of his selected individuals were precluded from serving on the Board, let alone that the Board refused to hear his appeal, *see id.* (alleging only that McDonald "feared retaliation" against his selected Board members). In other words, McDonald's argument that "the Board was hopelessly stacked against him due to . . . coercion," Resp.

---

[2] The availability of Board review is also potentially fatal to McDonald's theory that Hoffman is liable in his official capacity under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978), which requires that Hoffman be the final policymaker, *see Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997). "Generally, the existence of a reviewing body suffices to find that an official whose decisions are subject to review was not a final policymaker." *Lopez v. Gibson*, 770 F. App'x 982, 992 (11th Cir. 2019) (per curiam); *see Maschmeier v. Scott*, 508 F. Supp. 2d 1180, 1183 (M.D. Fla. 2007) ("[I]t is clear that the Sheriff was not the final policymaker. The Civil Service Board had the legal authority to review and reverse the Sheriff's termination decision, and its decision is binding on the Sheriff."), *aff'd*, 269 F. App'x 941 (11th Cir. 2008).

at 7, "is not equivalent to a public entity refusing to provide a process for [McDonald] to dispute his termination," *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, No. 9:16-CV-80655, 2016 WL 7242140, at *8 (S.D. Fla. Dec. 15, 2016) (rejecting employee's procedural due process claim that the termination hearing available to him was an "illusion," and explaining that "even if Defendants were biased against Plaintiff, such bias, if known, must be raised at the due process hearing") (citing *McKinney*, 20 F.3d at 1562)).

McDonald also did not pursue the state court procedures available to challenge the Board's purported bias, further dooming his claim at this stage. On this front, "after the [Civil Service Appeals Board] rules, the [Board's] decision is then further reviewable by a Florida circuit court under Rule 9.030(c)(3)." *Burge v. Wells*, No. 8:24-CV-2955-VMC-CPT, 2025 WL 3537617, at *10 (M.D. Fla. Dec. 10, 2025) (citing Fla. R. App. P. 9.030(c)(3)); *see also Puglia v. Nienhuis*, No. 8:22-CV-1954-VMC-CPT, 2023 WL 8543778 (M.D. Fla. Dec. 11, 2023) (explaining that the plaintiff "could then have sought mandamus relief in state court" if the Board declined to hear his appeal). Ultimately, "[s]ince the Florida courts possess the power to remedy any deficiency in the process by which [McDonald] was terminated, [he] cannot claim that he was deprived of procedural due process." *McKinney*, 20 F.3d at 1565. McDonald's claim must therefore be dismissed because his "volitional choice to forego available procedures, however unwise, cannot give rise to a

10

subsequent complaint that [he] has been 'deprived' of procedural protections."

*Marshall v. City of Cape Coral*, 797 F.2d 1555, 1560 (11th Cir. 1986).

### B. Supplemental Jurisdiction

Because I dismiss McDonald's lone federal claim, I must decide whether to continue exercising supplemental jurisdiction over the remaining state law contract and promissory estoppel claims.[3] Because I conclude that the balance of relevant factors weighs against doing so, I remand the claims to state court.

"In the ordinary course, where the federal claims have been dismissed and the case is before a federal district court solely through supplemental jurisdiction, a court should decline supplemental jurisdiction." *Stalley v. Cumbie*, 586 F. Supp. 3d 1211, 1249 (M.D. Fla. 2022) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)), *aff'd*, 124 F.4th 1273 (11th Cir. 2024). Before doing so, "courts engage in a two-step process: first, the district court must confirm that it has discretion to decline under § 1367(c); and second, it must consider whether prudential factors counsel against dismissal." *Id.*

Here, I may decline supplemental jurisdiction because I "dismissed all claims over which [the Court had] original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006)

---

[3] Neither McDonald's complaint nor Hoffman's Notice of Removal alleges that the parties are diverse or that the amount in controversy exceeds $75,000.

11

("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims.").

Next, I must consider whether "judicial economy, convenience, fairness, and comity" counsel against dismissing the remaining state counterclaims. *Ameritox, Ltd. v. Millennium Lab'y, Inc.*, 803 F.3d 518, 537 (11th Cir. 2015) (citation modified); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). In general, the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam). That is "particularly the case where the dismissal occurs without any analysis of the merits of the state claims." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) (citation modified).

All four factors support declining jurisdiction in this case. First, judicial economy favors remand. Hoffman removed this case approximately four months ago (shortly after it was filed in state court), *see* Notice of Removal, and limited resources have been expended on the litigation to date. Second, litigating in state court appears equally convenient to the parties. Both parties and their counsel are based in Florida and presumably can litigate as easily in Sarasota. Third, fairness to the parties favors remand. McDonald initially elected to file his primarily state-law claims in state court, and Hoffman exercised his right to remove based on a federal question. Now that the federal

12

claim has been resolved in Hoffman's favor, he cannot claim it is unfair to litigate in state court. Finally, comity strongly weighs against continuing to exercise supplemental jurisdiction over the remaining claims. "State courts, not federal courts, should be the final arbiters of state law in our federalist system." *Ameritox*, 803 F.3d at 540 (citation modified). Hoffman's motion to dismiss McDonald's contract and promissory estoppel claims raises questions about Florida's statutory waiver of sovereign immunity, as well as whether the SCSO's reporting and recordkeeping obligations impact the contract formation analysis. *See* Mot. at 9–13. Because the state court should resolve these purely state law issues in the first instance, I decline to exercise supplemental jurisdiction.

## IV.    CONCLUSION

McDonald does not allege that he availed himself of state procedures to challenge his termination, and thus McDonald fails to state a claim for a violation of the Fourteenth Amendment. And because economy, convenience, fairness, and comity favor remand, I decline to exercise supplemental jurisdiction over McDonald's remaining state law claims. Accordingly, the following is **ORDERED**:

1.    Defendant Hoffman's Motion to Dismiss (Doc. 17) is **GRANTED IN PART and DENIED IN PART.**

2.   Count II of the Amended Complaint (Doc. 15) is **DISMISSED WITH PREJUDICE.**

3.   The Clerk is directed to **REMAND** the remainder of this action to the Circuit Court for the Twelfth Judicial Circuit, in and for Sarasota County, Florida, and to **TRANSMIT** a certified copy of this order to the clerk of that court.

4.   The Clerk is further directed to **TERMINATE** any pending motions and deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, May 26, 2026.

Kathryn Kimball Mizelle
United States District Judge

14